Argued October 16, affirmed December 5, 1956

# RAMSETH *v.* MAYCOCK AND STATE INDUSTRIAL ACCIDENT COMMISSION

304 P. 2d 415

*Ray H. Lafky,* Assistant Attorney General of Oregon, Salem, argued the cause for appellant and intervenor-appellant. With him on the briefs were Robert Y. Thornton, Attorney General of Oregon, for appellant and for intervenor-appellant, and Tooze, Kerr, Hill & Tooze, Portland, for appellant.

*Nels Peterson* argued the cause for respondent. On the brief were Peterson & Pozzi, Portland.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND, PERRY and McALLISTER, Justices.

ROSSMAN, J.

This is an appeal by John G. Maycock, defendant, and by the State Industrial Accident Commission,

intervenor, from a judgment of the circuit court adverse to those two parties. The action which culminated in the challenged judgment was brought by Clarence A. Ramseth, a minor, through his father and guardian ad litem, against the aforementioned John G. Maycock to recover damages for injuries sustained while the plaintiff was riding in an automobile owned and operated by Maycock on April 23, 1952. The plaintiff sought judgment in the amount of $26,000 general damages and $1,000 special damages, reserving the right to amend his complaint at the time of trial to show the full amount of the special damages.

Pursant to ORS 656.582, defendant requested the State Industrial Accident Commission (ORS 656.402) to intervene in his defense. The commission, thereupon, acting by the Attorney General, filed an intervening supplemental answer on behalf of the defendant alleging that the injury received by the plaintiff arose out of and in the course of his employment by the defendant, who was an employer covered by the Oregon Workmen's Compensation Act (ORS 656.002 through 656.990) and that the plaintiff's sole remedy was under that Act.

Issue was joined by the plaintiff's reply to the intervening supplemental answer and, under the provisions of ORS 656.582(2), the question "Did the injuries, if any, of the plaintiff Clarence A. Ramseth arise out of and in the course of his employment by the defendant John Maycock on April 23, 1952?" was submitted to the jury. The jury, having returned a reply of "no", judgment was entered dismissing the intervening supplemental answer.

Defendant and intervenor present six assignments of error. The first challenges the court's refusal to grant a motion for a directed verdict. The next four

claim errors in the court's failure to give requested instructions, and the sixth is directed to the alleged failure of the court to advise a juror who addressed several questions to the court before the jury retired to deliberate upon its verdict.

Intervenor concedes that this court, in its consideration of the denial of the motion for a directed verdict, must look to the plaintiff's version of the facts in the event of any conflicts in the evidence.

Defendant owns and operates a service station near Tigard. In the course of business products of The Texas Company, under the brand name of "Texaco", are primarily sold. In the spring of 1951, plaintiff, then a high school student, 17 years of age, approached defendant with the view of securing part-time employment. Very little was said at that time beyond the agreement that defendant would call plaintiff when he needed him and pay at the rate of one dollar per hour for his services. Plaintiff testified to the arrangement which developed as follows:

"Q Now, Clarence, did you work—this sounds funny—did you work steady part time for him, did you work every single week for Mr. Maycock or were there weeks you were not called at all?

"A Well, I could expect to, once a week. You might call it steady. But other than that, there was no guarantee. I mean, there was Saturdays, Sundays, maybe once or twice during the week, but there was nothing definite that I would work any certain day or next week."

April 22, 1952, plaintiff went to the defendant's station to purchase gasoline. He had not worked for several days prior to that date. At that time defendant asked plaintiff whether he would like to attend a Texaco dealer meeting and dinner to be held in Mc-

Minnville on the following evening. Plaintiff was free to accept or reject the invitation as he saw fit. Defendant said that plaintiff would have a good time and also mentioned that he, defendant, was to receive a plaque in recognition of his having been a Texaco dealer for ten years.

Plaintiff accepted the invitation and the next evening defendant called for plaintiff and, with two other employes, drove to the meeting place in McMinnville. The meeting lasted for over two hours and was devoted primarily to the showing of three motion pictures illustrating various Texaco products and their promotion at service stations. After the films food was served.

Plaintiff testified that the meeting "didn't leave much impression on me, except other than good food there" and that "it was more or less of a get-together." It was his opinion that the meeting had been "aimed" mainly at the employers rather than the employes.

On the return trip to Tigard, immediately following the meeting, the accident occurred in which the plaintiff sustained the injuries here complained of.

A consideration of the statutory language "arising out of and in the course of his employment" has more often been presented to this court in situations in which the employe has sought to avail himself of the coverage of the act. Although that is not the case in this instance, the phrase must, nevertheless, be applied in the same manner. *Lamm v. Silver Falls Timber Co.*, 133 Or 468, 277 P 91, 286 P 527, 291 P 375, appeal denied 282 US 812, 51 S Ct 214, 75 L Ed 727.

■ Courts have repeatedly cautioned that the reading of other decisions is normally of little assistance when this issue is presented and that each case must be

decided on its own particular facts. Some guides, however, have been set forth. It, of course, is true that the words "arising out of and in the course of his employment" should be given a broad and liberal interpretation so as to effectuate better the statute's policy of evenly distributing the costs of injuries to workmen.

■ The words "arising out of" are normally said to require a causal connection between the employment and the accident, while the words "in the course of" point to the time, place and circumstances under which the accident takes place. However, "the mere fact that the employment brought the injured person to the place of the accident is not sufficient." *Stuhr v. State Industrial Accident Commission,* 186 Or 629, 208 P2d 450.

■ With these principles in mind, we shall turn to the evidence to determine whether it presented disputed questions of fact relating to material propositions of law. If such questions were raised by the evidence, and we believe that they were, then the motion for a directed verdict was properly denied.

One of the issues presented by the testimony was whether plaintiff would have had to work at the filling station on the night of the meeting had he chosen not to attend the meeting. Plaintiff testified that no such suggestion had been made by defendant, while defendant testified that plaintiff had been offered the alternative of attending the meeting or working.

Again, there was the question of the motive of defendant in inviting plaintiff to the meeting. It was defendant's contention that he wanted plaintiff to see the films so that he would receive training and thereby improve his usefulness as an employe. Plaintiff, on the other hand, testified that both from the

nature of the invitation and the subject matter of the meeting it was his conclusion that he had been asked to come along and share in good food and a good time. Another possible motive raised by the evidence was the desire of defendant to assure himself of an appreciative audience at the function at which he was to receive his ten year service award. In arriving at its conclusion to this question, the jury may well have taken into account the fact of plaintiff's youth and the intermittent nature of his employment.

A further dispute was whether the contract of employment reasonably contemplated that plaintiff would be invited to dealers' meetings. Defendant admitted that nothing on this subject was said at the time of hiring, but inferred that plaintiff should have known this fact from his past employment at another service station. Plaintiff's denial that the contract of employment contemplated attendance at such meetings raised another issue of fact for the determination of the jury.

Accepting plaintiff's version, as we must, the situation unfolds as an invitation by an employer to an employe to attend a dinner, which, though it was connected with the business, was not related to the employment. The employe was not being paid for his time, was free to attend or not as he saw fit, was not on the premises of the employer at the time of the injury, and would otherwise not have worked at the station during that period. In addition, the function was not contemplated as an incident of the employment at the time of hiring. The jury, therefore, could well have found that the injury sustained on the return trip did not "arise out of and in the course of" plaintiff's employment.

Before proceeding to a discussion of the cases

presented by intervenor's able and extensive brief, which we believe are distinguishable on their facts, several authorities more in point will be discussed. *Hildebrand v. McDowell Furniture Co.*, 212 NC 100, 193 SE 294, was a proceeding under the North Carolina Workmen's Compensation Act to recover for the death of one Wesley Williams, which allegedly resulted from injuries received in an accident "arising out of and in the course of" his employment. The employer was in the furniture manufacturing business and Williams was the foreman of its glue room. The company was participating in a furniture exhibition in another city and on Saturday afternoon the company superintendent drove there with some men to set up the display. In order to give "the boys a little outing," others, including Williams, were invited. The superintendent, referring to Williams, testified, "I told him I would like for him to go." The testimony further brought out that Williams could not have learned anything which would have helped him in his work by looking at furniture displays; that he received no pay for that weekend; that he went voluntarily and was not under orders while at the exhibition; and that no mention of attendance at furniture shows had been made at the time of hiring. Williams was killed in an automobile accident on the return trip. Compensation was awarded by the commission and judgment affirming the award was entered by the Superior Court. However, holding that in light of the facts there was no "sufficient competent evidence" to support the finding that the death had "arisen out of and in the course of" the employment, the judgment was reversed.

*Children's Bureau v. Nissen (Del)*, 3 Ter 209, 29 A2d 603, was a proceeding under the Workmen's

Compensation Act of Delaware, in which compensation was claimed for the death of one Rowena Nissen, a social worker, who was employed at the time of her death by the Children's Bureau of Delaware, a corporation whose purpose was to protect the rights of children. Miss Nissen requested permission to attend a National Convention of Social Workers at which she was to read a paper which she had prepared prior to her taking the position with the Bureau. This permission was granted and, although she was not one of the bureau's official representatives, she received full pay for the time she spent at the convention, and the time was not deducted from her vacation period. It was felt that her attendance at the convention would be training of value to her and the bureau. The Industrial Accident Board awarded compensation, but this was reversed and annulled. The court held that the death of Miss Nissen in an automobile accident while returning from the convention did not "arise out of and in the course of" her employment. The court acknowledged that the purpose of her journey was not unrelated to her employment, but felt that her personal purpose had been the paramount force behind the venture. The court laid particular emphasis on the fact that the deceased had not been required to attend the convention by saying, "The deceased employe was in no atmosphere of necessity or compulsion."

The significance of the presence or absence of compulsion is pointed out in two other cases: *Bower v. Industrial Commission*, 61 Ohio App 469, 22 NE2d 840, and *Stout v. Sterling Aluminum Products (Mo App)*, 213 SW2d 244. In the Bower case, the Industrial Commission denied a teacher compensation for injuries received in an automobile accident which took

place while she was attending a teachers' institute. She was awarded compensation in the Common Pleas Court and this judgment was affirmed, since claimant had been attending the institute "as she had been directed to do by her employer." In the Stout case, an award of compensation, based on injuries received while attending a company picnic, was reversed. The court said:

"The benefits of the compensation statute cannot be extended with reason to include an injury received by the employee falling in a public park where a picnic is being held, which, although sponsored by the employer, the employee is under no compulsion to attend, and suffers no penalty for failure to attend."

There are four factors, one or more of which are present in each of the cases cited by intervenor, which distinguish them from the present case. The first of these is that at the time of the injury the employe was engaged in an activity found to be for the benefit of the employer. An important factor in this determination in several of the cases is the type of work which the employe has been engaged to perform. The scope of the employment of salesmen and public relations workers, for example, is usually held to have an especially wide range. *Blair v. Shaw,* 171 Kan 524, 233 P2d 731 (employer could advertise that he employed factory trained mechanics); *Dameron v. Yellowstone Trail Garage,* 54 Ida 646, 34 P2d 417 (employe would be better trained in methods of selling brake linings though his earnings would not thereby be increased); *Miller v. Keystone Appliances,* 133 Pa Super 354, 2 A2d 508 (picnic found to improve morale and encourage employes to work better); *Rafferty v. Dairymen's League Co-op Assn. (N. J. Dept. of Labor),* 200 A 493 (public relations man injured after night

of entertaining—"the field of his employment— in a sense was boundless.") ; *Harrison v. Stanton,* 26 NJ. Super 194, 97 A2d 687 (employe engaged in public relations work) ; *Kenny v. Lord & Taylor, Inc.,* 254 NY 532, 173 NE 853 (speeches on salesmanship given at dinner—see *Wilson v. General Motors Corp.,* 298 NY 468, 84 NE2d 781) ; *Wamhoff v. Wagner Electric Corp.,* 354 Mo 711, 190 SW2d 915 (employe practiced electroplating) ; *Sinclair v. Wallach Laundry, Inc.,* 252 App Div 715, 298 NYS 686 (route salesman attended rug cleaning demonstration) ; *Linderman v. Cownie Furs,* 234 Iowa 708, 13 NW2d 677 (salesman injured on trip awarded as winner of sales contest—"To spurn the invitation might not only reflect on the salesman's loyalty, but jeopardize the whole scheme which admittedly was instituted by the employer's sales manager to spur sales.").

The second distinguishing factor is present in those decisions in which it was found that the participation of the employe in the activity was contemplated by the employer and the employe either at the time of hiring or later. *Blair v. Shaw,* supra, (taking of mechanics' examination contemplated) ; *Stakonis v. United Advertising Co.,* 110 Conn 384, 148 A 334 (all employes were informed that picnics were a regular feature of the employment at the time of hiring) ; *Kowcun v. Bybee,* 182 Or 271, 186 P2d 790 (employe's presence in parking lot after shift contemplated by employer).

A third factor, somewhat connected with the second, is that the activity was a customary one. *Blair v. Shaw,* supra, (mechanics' examinations) ; *Stakonis v. United Advertising Co.,* supra, (picnics) ; *Wamhoff v. Wagner Electric Corp.,* supra, (doing personal work during working hours) ; *Pridgen v. Industrial Commission,*

70 Ariz 149, 217 P2d 592 (working at employer's home as well as at the shop.)

The final element, one stressed earlier, is that the activity was either required by the employer or employment, or was presented to the employe under such circumstances that he would consider it detrimental to his employment status to refuse. *Stakonis v. United Advertising Co.,* supra, ("We cannot fail to note the distinction between a mere invitation to enjoy the hospitality of the employer and a direct order to attend (the picnic) with the imposition of a penalty for the disobedience of that order."); *Sinclair v. Wallach Laundry, Inc.,* supra, (salesman under instructions); *Linderman v. Cownie Furs,* supra, (refusal might jeopardize sales promotion scheme); *Kowcun v. Bybee,* supra, (employee "required to walk that path"); *Lamm v. Silver Falls Timber Co.,* supra, (use of logging railroad most practical means for logger to return to camp).

The reliance placed upon the Lamm decision by intervenor warrants the bestowing of particular attention to it. In that case, an injury to a logger returning to camp from a holiday, sustained while traveling on the employer's logging railroad, was held to have arisen "out of and in the course of" his employment, despite the facts that neither did the accident occur during working hours nor was the workman being paid for his time. This court deemed the funishing of the transportation an essential part of the employer's activities:

> "It follows that to supply the workman with the means of going 'to the camp from the outside world' as the parties have termed these trips, serves not only the purposes of the employee but also renders the business of the employer possible."

See, also, *I-L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange*, 202 Or 277, 273 P2d 212, 275 P2d 226.

Without further review of the authorities and the evidence, we express our belief that the motion for a directed verdict was properly denied.

The trial judge interpreted the phrase "arising out of and in the course of" his employment to the jury in the following instruction:

> "I instruct you that in order for the defendant and the State Industrial Accident Commission to prevail in this case he and it must prove by a preponderance of satisfactory evidence that plaintiff's injuries both arose out of his employment and also in the course of his employment, and that proof of both must concur in time and place.
>
> "In this connection I instruct you that the phrase 'arise out of' his employment means the injuries have arisen out of the nature, conditions, obligations of employment within the contemplation of the employer and employe, and incidents to that employment.
>
> "I further instruct you that the phrase 'in the course of' refers to the time, place, and circumstances under which the accident took place.
>
> "In answering the question submitted to you, you will consider the time of the injury, its place, the duties of the employe, the relation between the trip in question and the employment, any benefits to the employer by the employe's attendance at the meeting in question, the method of payment, whether at the time of the injury the workman was discharging some special service incidental to the nature of his employment in the interest of his employer, the invitation or request, the nature of the meeting, its purpose, and any and all other factors supported by any evidence in this case bearing upon the question."

■ Although the instructions requested by intervenor were substantially free from error, we agree with the trial judge that they were to a great degree "argumentative, piecemeal, and evidentiary." Refusal to give them did not constitute error.

■ Intervenor's final assignment is also without merit. The juror's queries were concerned with the question of coverage. The court had already instructed the jury as follows:

> "You are instructed that at the time of the accident involved in this case the defendant John G. Maycock was an employer covered by the Workmen's Compensation Act of the State of Oregon.
>
> "You are instructed that if you find by a preponderance of the evidence that the plaintiff's injuries, if any, were sustained by the plaintiff in an accident arising out of and in the course of plaintiff's employment by the defendant, then your answer to the special verdict would be 'Yes', because under such circumstances the plaintiff had a right to compensation under the Oregon Workmen's Compensation Act. Otherwise, if you do not find that plaintiff's injuries arose out of an accident arising out of and in the course of his employmen by defendant, your answer would be 'No.'"

The court's replies to the juror repeated the tenor of the instructions and reiterated that the sole question for the determination of the jury was whether or not the accident arose out of and in the course of plaintiff's employment by defendant.

The challenged judgment is affirmed.