Argued May 3, reversed June 1, reconsideration denied June 22, petition for review denied September 27, 1977

In the Matter of the Compensation of the Beneficiaries of

ALLEN, *Respondents—Cross-Appellants,*

*v.*

STATE ACCIDENT INSURANCE FUND, *Appellant—Cross-Respondent.*

(No. A 76-07-10400, CA 7418)

564 P2d 1086

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for appellant—cross-respondent. With him on the briefs were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Ridgway K. Foley, Jr., Portland, argued the cause for respondents—cross-appellants. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe and James D. Huegli, Portland.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

In this worker's compensation proceeding, the family of the decedent worker seeks death benefits. The issue is whether the injury which caused the worker's death arose out of and in the course of his employment, ORS 656.005(8)(a). The hearings officer and the Workmen's Compensation Board held that it did not; the circuit court, reversing the Board, held that it did, and the State Accident Insurance Fund appeals.

Decedent was a security patrolman for Mt. Hood Community College. He was paid by salary based upon an hourly rate for a 40-hour week. He regularly worked the day shift from 8 to 4 and was on call for emergencies and special events. While on duty, he wore a uniform and equipment belt, drove a special truck and carried with him a walkie-talkie, all of which were supplied by the college. The truck was not to be used for personal business. He was free to take his lunch period whenever circumstances allowed, but he was required to carry his walkie-talkie with him and stay within radio range of the college so that he could return for any emergency requiring his presence. Usually he went home in the truck for lunch at noon.

At 9:50 a.m. on the day of his death, decedent took an early lunch hour to tend to a personal matter at the credit union. He drove his own car, continued to wear his uniform and belt, and took his radio. The credit union office was within radio range. On his way, about one or one-and-a-half miles from campus, a log truck drove into his car causing his death.

The statutory phrase "arising out of and in the course of employment" must be applied in each case so as to best effectuate the socio-economic purpose of the Workers' Compensation Act: the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer. 1 Larson, Workmen's Compensation Law § 2.20. Various

[ 633 ]

concepts have arisen from attempts to rationalize that purpose, e.g., the going and coming rule, special errands, lunch hour cases, dual purpose trips, impedimenta of employment, horseplay, etc. Each is helpful for conceptualization and indexing, but there is no formula for decision. *Etchison v. SAIF,* 8 Or App 395, 398, 494 P2d 455 (1972). Rather, in each case, every pertinent factor must be considered as a part of the whole. It is the basic purpose of the Act which gives weight to particular facts and direction to the analysis of whether an injury arises out of and in the course of employment.

Here, the decedent's activity at the time of his injury was personal. The respondents point out several circumstances to relate the activity to the employment, but they are not sufficient, individually or together, to diminish the essentially personal nature of the decedent's errand:

■ 1. The fact that decedent was on call is not persuasive unless the workman is actually called or his activity is significantly restricted. In *Walker v. SAIF,* 28 Or App 127, 558 P2d 1270 (1977), we adopted a view similar to that expressed by Professor Larson:

> "Although an employee is continuously on call, an injury off the premises in the course of a personal activity is not ordinarily considered to be within the Compensation Act. This rule has been applied * * * to various * * * personal errands." (Footnotes omitted.) 1 Larson, Workmen's Compensation Law 5-156—5-157, § 24.23 (1972).
>
> "* * * [T]he mere fact that an employee is generally on call should not make a [compensable] special errand of a normal going and coming trip that is not in response to a special call." (Footnote omitted.) 1 Larson, Workmen's Compensation Law 4-105, § 16.12 (1972).

The radio is significant as a tool of the decedent's on-call status. It is conceptually similar, though technologically more effective, to leaving one's phone number with one's employer or checking in periodically.

■ 2. The decedent's encumbrance by the other impedimenta of his employment was coincidental rather than related to the demands of the job. He could have changed clothes, but, for convenience, did not. Unlike the business papers transported by the decedent in *Bebout v. SAIF,* 22 Or App 1, 537 P2d 563, *aff'd* 273 Or 487, 541 P2d 1293 (1975), the conveyance of the uniform and belt from the campus to the credit union was not a transportation for the benefit of the employer. 1 Larson, Workmen's Compensation Law § 18.24 (1972).

3. The trip did not have a dual purpose, one of which was the employer's, because the trip would not have been taken for the employer's purposes. *Rosencrantz v. Insurance Service,* 2 Or App 225, 467 P2d 664 (1970).

■ 4. The finding of the circuit court that the lunch hour was in furtherance of the employer's interest in having a refreshed employe is untenable where the employe travels in the morning to defer a loan payment instead of taking rest and nourishment at noon. It is therefore not analogous to the coffee break situation in *Jordan v. Western Electric,* 1 Or App 441, 463 P2d 598 (1970).

■ 5. The employer's acquiescence in the employe's use of lunch hour for a personal activity is only meaningful where there is a physical or purposive connection of the activity to the employment. *See Olsen v. SAIF,* 29 Or App 235, 562 P2d 1234, *rev pending* (1977).

6. The decedent was paid for the lunch hour, but only in the sense that his salary was calculated on the basis of eight-hour shifts.

■ Looking to all the circumstances, we hold that the decedent's death may conceivably have occurred in the course of his employment, but that there is not sufficient connection of decedent's personal errand with the employment to justify a holding that it arose out of the employment. *See Robinson v. Felts,* 23 Or

App 126, 541 P2d 506 (1975). Therefore it is not compensable, the circuit court order must be set aside in its entirety, and the second issue on appeal relating to attorney fees is moot under *Leech v. Georgia-Pacific Corp.,* 254 Or 351, 359-60, 458 P2d 438, 460 P2d 359 (1969).

Reversed.